BRYAN CAVE LLP
Herbert Teitelbaum
Noah Weissman
1290 Avenue of the Americas
New York, NY 10104
*Attorneys for Dogsters, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------

J&J SNACK FOODS SALES CORP.,

                Plaintiff,

            - against -

DOGSTERS, LLC,

                Defendant.

-------------------------------

INDEX NO. 07-CV-03917 (AKH)

**ANSWER AND COUNTERCLAIMS**

Defendant Dogsters LLC ("Dogsters"), by its attorneys Bryan Cave LLP, hereby answers J&J Snack Foods Sales Corp.'s ("J&J") complaint dated May 15, 2007 ("Complaint"), and alleges in support of its counterclaims, as follows:

1.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3.     Admits the allegations contained in paragraph 3 of the Complaint.

4.     Admits the allegations contained in paragraph 4 of the Complaint.

5.     Admits the allegations contained in paragraph 5 of the Complaint, and further avers that subject matter jurisdiction also arises under the Trademark Act of 1946, as amended, pursuant to 15 USC § 1121 and 28 USC §§ 1331 and 1338; and that supplemental jurisdiction arises under state statutory law and the common law pursuant

to 28 USC § 1367(a) because the claims and counterclaims are so related to the federal law that they form part of the same case and controversy and derive from a common nucleus of operative facts; and that jurisdiction also arises over all counterclaims for unfair competition pursuant to 28 USC § 1391(b).

6. Admits the allegations contained in paragraph 6 of the Complaint, except denies that J&J can properly claim any right to recovery for any injury it may suffer from a denial of the declaration that J&J seeks; and further avers jurisdiction is also proper regarding the counterclaims pursuant to 28 USC §2201 because an actual case and controversy has arisen between the parties regarding whether J&J has any rights under a license agreement to market and sell Dogsters' products and J&J's position threatens injury to Dogsters.

7. Admits the allegations contained in paragraph 7 of the Complaint and further avers that venue is proper pursuant to 28USC 1391(b).

8. Denies knowledge and information sufficient to form a belief as to the truth of the allegation contained in paragraph 8 of the Complaint.

9. Denies knowledge and information sufficient to form a belief as to the truth of the allegation contained in paragraph 9 of the Complaint.

10. Denies the allegations contained in paragraph 10 of the Complaint.

11. Denies the allegations contained in paragraph 11 of the Complaint, except admits that Integrated Brands Inc. ("IB") and Dogsters entered into a License Agreement, dated April 20, 2004 ("License Agreement") and respectfully refers to the License Agreement, dated April 20, 2004, for a full and complete statements of its terms. A true and correct copy of the License Agreement is attached as Exhibit A.

12. Admits the allegations contained in paragraph 12 of the Complaint, except denies that the letter was to CoolBrands International, Inc. ("Coolbrands") and respectfully refers to the March 29, 2007, letter from Jack Hassid for a full and complete statements of its terms.

13. Denies the allegations in paragraph 13 of the Complaint, except admits that Dogsters counsel asserted in his March 29, 2007, letter that paragraph 14(a) of the License Agreement "provides, among other things, that the Licensee may assign the License Agreement to a third party only if that party is a 'third party acquirer of all or a majority of the business, assets or capital stock of Licensee...'"; and respectfully refers to the March 29, 2007, letter for a full and complete statements of its terms.

14. Denies the allegations in paragraph 14 of the Complaint, specifically denies that counsel for J&J documented J&J's acquisition of a majority of IB's assets, and respectfully refers to the April 2, 2007, letter from A. Fred Ruttenberg, Esq., for a full and complete statements of its terms. A true and correct copy of the April 2, 2007 letter of A. Fred Ruttenberg is attached as Exhibit B.

15. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16. Denies the allegations in paragraph 16 of the Complaint and respectfully refers to the April 2, 2007 letter of Ruttenberg for a full and accurate statement of its content.

17. Denies the allegations contained in paragraph 17 of the Complaint.

18. Denies the allegations contained in paragraph 18 of the Complaint.

19. Denies the allegations contained in paragraph 19 of the Complaint.

20. Denies the allegations contained in paragraph 20 of the Complaint.

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Dogsters repeats and restates each of the answers contained in paragraphs 1 through 21 as if fully set forth herein.

23. Denies that any response is required to the assertions in paragraph 23 of the Complaint, but to the extent any response is required, Dogsters denies any allegations in paragraph 23 of the Complaint and avers that J&J is not entitled to any of the relief requested in paragraph 23 of the Complaint.

24. Denies the allegations contained in paragraph 24 of the Complaint except admits that Dogsters maintains that IB improperly purported to assign the License Agreement.

25. Denies the allegations contained in paragraph 25 of the Complaint, except admits that an actual, a present and a justifiable controversy has arisen between J&J and Dogsters concerning, among other things, J&J's claim that IB properly assigned J&J the License Agreement.

26. Denies that any response is required to the assertions in paragraph 26 of the Complaint, but to the extent any response is required, Dogsters denies any allegations in paragraph 26 of the Complaint and avers that J&J is not entitled to any of the relief requested in paragraph 26 of the Complaint.

27. Dogsters repeats and restates each of the answers contained in paragraphs 1 through 26 as if fully set forth herein.

28. Denies the allegations in paragraph 28 of the Complaint.

29. Denies the allegations in paragraph 29 of the Complaint.

30. Denies the allegations in paragraph 30 of the Complaint.

31. Denies the allegations in paragraph 31 of the Complaint.

32. Denies the allegations in paragraph 32 of the Complaint.

33. Dogsters repeats and restates each of the answers contained in paragraphs 1 through 32 as if fully set forth herein.

34. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35. Upon information and belief, denies the allegations contained in paragraph 35 of the Complaint.

36. Denies the allegations in paragraph 36 of the Complaint.

37. Denies the allegations in paragraph 37 of the Complaint.

38. Dogsters repeats and restates each of the answers contained in paragraphs 1 through 37 as if fully set forth herein.

39. Admits the allegations of paragraph 39 of the Complaint.

40. Admits the allegations of paragraph 40 of the Complaint.

41. Admits the allegations of paragraph 41 of the Complaint.

42. Admits the allegations of paragraph 42 of the Complaint.

43. Admits the allegations of paragraph 43 of the Complaint.

44. Denies the allegations contained in paragraph 44 of the Complaint.

45. Denies the allegations contained in paragraph 45 of the Complaint.

46. Denies the allegations contained in paragraph 46 of the Complaint.

47. Denies knowledge or information in paragraph 47 of the Complaint.

48. Denies the allegations in paragraph 48 of the Complaint and avers that no reimbursement is due J&J.

## AFFIRMATIVE DEFENSES

#### AND AS FOR A FIRST AFFIRMATIVE DEFENSE

49.  J&J fails to state a claim upon which relief can be granted.

#### AND AS FOR A SECOND AFFIRMATIVE DEFENSE

50.  J&J's claims are barred, in whole or in part, for failure of consideration in connection with its assertion that it obtained rights under the License Agreement.

#### AND AS FOR A THIRD AFFIRMATIVE DEFENSE

51.  J&J's claims are barred, in whole or in part, by the doctrine of estoppel.

#### AND AS FOR A FOURTH AFFIRMATIVE DEFENSES

52.  J&J's claims are barred, in whole or in part, because the License Agreement was terminated prior to its purported assignment to J&J.

## COUNTERCLAIMS

### Nature of the Action

1.  This is an action for injunctive relief and damages for trademark infringement, trade dress infringement, false designation of origin, deceptive trade practices, unfair competition, misappropriation, and unjust enrichment.

2.  Without Dogsters approval or consent, J&J knowingly, willfully, unlawfully, and intentionally misappropriated and exploited Dogsters longstanding and

famous trademark and tradename DOGSTERS, as well as other intellectual property and trade secrets, associated with Dogsters frozen, pet-food products. J&J asserts that it has a right to do so pursuant to the License Agreement, between Dogsters and Intergrated Brands, Inc. ("IB"), which was never properly assigned by IB to J&J and was terminated prior to the purported assignment.

## Parties

3. Dogsters LLC ("Dogsters") is a Delaware limited liability company, having a place of business at 161 Morningside Drive, Milford, CT 06460.

4. J&J Snack Foods Sales, Corp. is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with its principal place of business located at 600 Central Highway, Pennsauken, New Jersey.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over the claims in this action arising under the Trademark Act of 1946, as amended, relating to trademark infringement, false designations of origin and dilution pursuant to 15 USC §1121 and 28 USC §§ 1331, 1332 and 1338.

6. This Court has supplemental jurisdiction over the claims in this action arising under state statutory law and the common law pursuant to 28 USC § 1367(a) because such claims are so related to the federal claims that they form part of the same case and controversy and derive from a common nucleus of operative facts. This Court also has jurisdiction over all claims for unfair competition pursuant to 28 USC § 1338(b).

7. Venue is proper before this Court pursuant to 28 USC § 1391(b) based on the residency of Dogsters and that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District.

## Facts

### Dogsters Brand and Business

8. Dogsters was founded by a father and son team, Ed and Greg DeLuca, in the fall of 2003, to bring to the market a new line of healthy, frozen ice-cream style treats for dogs.

9. For three years prior to the product launch, the DeLucas worked with PhD, food scientists to research and develop a formula for dog treats that look like human treats but met Greg DeLuca's stringent requirements, which he calls the Big Four: Fun, Low Fat, Low Calorie and All Natural.

10. During the first six months on the market, the DeLucas did a "soft launch" of three products for their frozen pet food line. More than two million "snow cups," one of the three products launched, were sold with distribution in only 17 supermarket chains in the Northeast.

11. Dogsters quickly became a well-known and esteemed company and product line in the pet food industry, among consumers, and the fund-raising community for pet causes. Dogsters attained a reputation for high quality and healthful pet treats, which pets and their owners loved. Dogsters accordingly acquired outstanding renown and invaluable goodwill throughout its markets in the United States.

12. In April 2004, Integrated Brands, Inc. became Dogsters' licensee, rolling out Dogsters five premium products in May 2005.

13. Dogsters and IB entered into a License Agreement in April 20, 2004, which is attached as Exhibit A.

14. Dogsters is the owner of the registered trademark and trade name Dogsters for frozen food products, and all associated trademarks, service marks, trade names, logos, trade dress, copyrights, and other intellectual property (collectively, "Trademarks").

15. Among the trademarks and trade dress used by Dogsters to identify different items in its product line, are the following: "Cookies and Snow," "Dogsters Healthy Treats," "Snow Cups," "United Fido Orbiters," and "Ya Yogurt Combos." These marks also have been registered with the US Trademark office.

16. Upon the terms and conditions set forth in the License Agreement, Dogsters granted IB the exclusive right, license and privilege of using the Trademarks in the United States through certain specified distribution channels in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of all edible treats or snacks for dogs or other pets sold in a frozen form or intended to be eaten or served in a wholly or partially frozen state, including "ice cream style" novelties and cakes (collectively, "Dogsters Treats").

17. Dogsters is the owner of the product formulas, recipes, trade dress, manufacturing processes or instructions or other "know how" used in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats.

C042858/0206158/1386629.3

18.     Dogsters granted IB the exclusive right, license and privilege of using any all existing product formulations, recipes, trade dress, manufacturing processes or instructions or other "know how" used in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats (collectively, "Trade Secrets").

19.     In the License Agreement, IB recognized the great value of the goodwill associated with the Trademark and acknowledged that the Trademark and all rights in the Trademark, the goodwill pertaining to the Trademark, and the Trade Secrets belong exclusively to Dogsters. IB also agreed not to contest Licensor's rights in the Trademark or perform any material act or omission adverse to those Trademark rights.

### Termination of the License Agreement

20.     On May 25, 2006, Dogsters attorney, by letter ("Default Letter"), advised IB that it was in material default of its obligations under the License Agreement.

21.     Dogsters noted, in the Default Letter, that in 2006, IB's distribution of Dogsters products had markedly and significantly decreased from 2005. Dogsters was in nearly 30% fewer stores than the previous year. The average number of facings per store had decreased 34% and the data was continuing to trend downward. There also had been a sharp decrease in the net revenue from sales of Dogsters products from 2005 to 2006. IB, which had indicated it could provide national distribution had only minimal distribution capabilities in the midwest and west. Upon information and belief, IB also had not budgeted sufficient money for advertising, marketing, or slotting fees for

Dogsters Treats in 2006. Rather than expand Dogsters Treats distribution, as IB had promised it would do, IB largely abandoned these obligations. Accordingly, IB was in material breach of its obligation to use commercially reasonably efforts to distribute and sell Dogsters Treats.

22.     In addition, upon information and belief, IB failed in the last half of 2006 and the first quarter of 2007 to use commercially reasonable efforts in distributing and selling Dogsters Treats.

23.     The Default Letter also noted a breach of the quality control standards imposed by the License Agreement. Dogsters cited, as evidence, numerous complaints received concerning the quality of the Dogsters Treats manufactured and distributed by IB.

24.     IB then failed to cure its material defaults within 30 days or take necessary steps and diligently pursue them if the default could not be cured within 30 days, as provided for in Paragraph 9(c) of the License Agreement. Accordingly, the License Agreement terminated.

25.     In October 2006, Coolbrands International, Inc., the parent company of IB, announced that it was experiencing severe financial difficulties and had begun to divest itself of its assets.

26.     Dogsters contacted IB to discuss this announcement and its understanding that IB no longer was manufacturing products.

27.     Sales of Dogsters Treats had dropped to approximately $18,000 for the monthly reporting period beginning in December 2006, in comparison to approximately $111,000 during comparable period in 2005.

28. Upon information and belief, the sales of Dogsters Treats continued to languish in the first quarter of 2007, as IB struggled with the collapse of its business and neglected its obligations to distribute and sell Dogsters Treats.

### Improper Effort to Transfer the License

29. On March 30, 2007, IB advised Dogsters, by letter, of its intention to assign the License Agreement to J&J.

30. J&J then sent an April 2, 2007 letter to Dogsters, stating that IB had assigned the License Agreement to it. A true and correct copy of the April 2 letter is attached as Ex. B.

31. In the April 2, 2007 letter, J&J advised Dogsters that it had "acquired substantial assets" from IB.

32. The License Agreement granted IB only a limited right to assign the License Agreement to a third party acquirer: "Licensee may assign this Agreement ... to any third party acquirer of all or a majority of the business, assets or capital stock of Licensee...."

33. Upon information and belief, J&J did not acquire all or a majority of the business, assets or capital stock of IB.

34. IB, accordingly, did not have the right under the License Agreement to transfer the License Agreement to J&J.

12

35. On or about April 25, 2006, J&J announced that it will be marketing Dogsters Treats and that "with this unique canine-friendly brand, J&J [] will be a dogs best friend!"

36. J&J further co-opted Dogsters goodwill and improperly attributed rights to Dogsters Trademarks to itself in its April 25 announcement by stating that "Dogsters® has a leg up on the competition, it is the only healthy, all natural, low calorie, and low fat frozen ice-cream style treat for dogs. Dogsters® was named one of the top ten Regional New Products in *Frozen Food Age* 2005 Top New Product Awards."

### Count 1: Trademark Infringement

37. Dogsters repeats and reincorporates herein by reference each of the foregoing allegations.

38. J&J does not have the right to use the Trademark in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats.

39. Nonetheless, J&J has done so and continues to do so in violation of 15 USC § 1114(1).

40. Upon information and belief, the activities of J&J complained of herein constitute willful and intentional infringement of Dogsters trademark rights. These activities were commenced and continue despite J&J's knowledge that the use of the Trademarks was and is in direct contravention of Dogsters' rights.

41. J&J's use of the Trademarks in the manner described herein is likely to cause confusion and mistake in the minds of the purchasing public and, in particular,

C042858/0206158/1386629.3

tends to and does create the false impression that J&J products are manufactured and distributed with the authorization, approval, and sponsorship of Dogsters.

42.  Dogsters has no adequate remedy at law, and is suffering irreparable harm and damage as a result of the acts of J&J in an amount to be proven at trial, but believed to be in excess of $75,000. Dogsters also seeks and is entitled to J&J's profits, punitive or treble damages, costs and attorneys fees.

## Count II: False Designation of Origin

43.  Dogsters repeats and reincorporates herein by reference each of the foregoing allegations.

44.  J&J has affixed, applied or used in connection with the sale of their goods, false descriptions and representations, which tend falsely to describe or represent that the goods and services offered by J&J are sponsored by authorized by of connected with Dogsters.

45.  Upon information and belief, the activities of J&J complained of herein constitute willful and intentional use, appropriations, and infringements of Dogsters Trademarks; completely and deliberately disregard Dogsters rights and were commenced and have continued despite J&J's knowledge that the use of a simulation or colorable imitation of the Trademarks in the manner described herein was and is in direct contravention of Dogsters' rights, in violation of 15 USC § 1125(a).

46.  Dogsters has no adequate remedy at law, and is suffering irreparable harm and damage as a result of the acts of J&J in an amount to be proven at trial, but believed to be in excess of $75,000. Dogsters also seeks and is entitled to J&J's profits, punitive or treble damages, costs, and attorneys fees.

C042858/0206158/1386629.3

## Count III: Common Law Trademark Infringement and Unfair Competition

47. Dogsters repeats and reincorporates herein by reference each of the foregoing allegations.

48. Upon information and belief, the activities of J&J complained of herein constitute common law trademark infringement and unfair competition.

49. In addition to the activities described above, J&J has, without proper authorization, appropriated the Trade Secrets, including the existing product formulations, recipes, trade dress, manufacturing processes or instructions or other "know how" used in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats. This activity constitutes unfair competition.

50. Dogsters has no adequate remedy at law, and is suffering irreparable harm and damage as a result of the acts of J&J in an amount to be proven at trial, but believed to be in excess of $75,000. Dogsters also seeks and is entitled to J&J's profits, punitive damages, costs and attorneys fees.

## Count IV: Misappropriation of Dogsters' Trade Secrets

51. Dogsters repeats and reincorporates herein by reference each of the foregoing allegations.

52. J&J has, without proper authorization, appropriated the Trade Secrets, including the existing product formulations, recipes, manufacturing processes or

instructions or other "know how" used in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats.

53. J&J obtained the Trade Secrets from IB, which was contractually obligated under the License Agreement to keep them confidential.

54. Dogsters has no adequate remedy at law, and is suffering irreparable harm

55. Dogsters also has suffered damages as a result of the acts of J&J in an amount to be proven at trial, but believed to be in excess of $75,000. Dogsters also seeks and is entitled to J&J's profits, punitive damages, and attorneys fees.

**WHEREFORE**, Dogsters demands judgment against J&J as follows:

1. That J&J, their officers, agents, directors, servants, employees, representatives, successors and assigns and all others in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained:

(a) from using in any manner the trademark and trade name Dogsters and all associated trademarks, service marks, trade names, logos, trade dress, copyrights, and other intellectual property, any colorable imitation of the mark or any variation of the mark, and any thing or mark confusingly similar thereto;

(b) from representing, suggesting in any fashion, or performing any act which may give rise to the belief that J&J, or any of their goods are authorized or sponsored by Dogsters;

(c) from using, transferring, conveying or otherwise disseminating the Trade Secrets, including the product formulations, recipes, manufacturing processes or

instructions or other "know how" used in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats;

(d) from doing any other act or thing reasonably calculated or likely to cause confusion, mistake, or deception in the mind of the public or to induce the belief or to lead to purchasers or consumers into the belief that any products manufactured or distributed by J&J are Dogsters' products or that J&J is in any way connected, endorsed, sponsored, associated, affiliated or connected with Dogsters or its products, and from otherwise unfairly competing with Dogsters or misappropriating that which rightfully belongs to Dogsters.

(e) from refusing to take appropriate steps to correct prior public statements as to its relationship with Dogsters products.

2. That Dogsters be awarded monetary relief in an amount to be determined at trial, including:

(a) all profits, gains, and advantages wrongfully realized or received by J&J as a result of J&J's actions;

(b) all damages sustained by Dogsters as a result of J&J's actions;

(c) treble and punitive damages under common law, 15 USC § 1117, and any other applicable law

(d) the cost of this action and reasonable attorneys fees; and

(e)  such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 4, 2007

BRYAN CAVE LLP

By: /s/Noah Weissman
Noah Weissman (NW 8592)
Herbert Teitelbaum (HT 7762)
Martha Lieberman (ML 2418)
1290 Avenue of the Americas
New York, New York  10102

*Attorneys for Dogsters, LLC*

C042858/0206158/1386629.3