Exhibit A

BRYAN CAVE LLP
Herbert Teitelbaum
Noah Weissman
1290 Avenue of the Americas
New York, NY 10104
*Attorneys for Dogsters, LLC*
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JUN 0 4 2007

J&J SNACK FOODS SALES CORP.

Plaintiff,

- against -

DOGSTERS, LLC,

Defendant.

**INDEX NO. 07-CV-03917 (AKH)**

DOGSTERS, LLC

Plaintiff,

- against -

INTEGRATED BRANDS, INC.,

Defendant.

**THIRD-PARTY COMPLAINT**

For its third-party complaint against Integrated Brands, Inc. ("IB"), plaintiff

Dogsters, LLC ("Dogsters"), by and through its attorney Bryan Cave LLP, alleges as

follows:

## NATURE OF THE ACTION

1.    This is a third-party action for damages, injunctive and declaratory relief

arising from defendant IB's breach of a license agreement entered into by Dogsters and

IB. IB breached the license agreement by failing to meet its obligation to market and

distribute various Dogsters products, to act in good faith to protect Dogsters trademarks

and goodwill, and to maintain the confidentiality of the trade secrets licensed to it by Dogsters, as well as by improperly seeking to assign the license agreement to a third-party and then discontinuing its distribution and sale of the Dogsters products. In addition, IB's discontinuance of its business operations triggers an automatic termination of the license agreement.

2.     As a result of IB's wrongful actions and omissions, Dogsters is entitled to a declaration that the parties' license agreement was and is terminated and to damages as a result of IB's failure to market, distribute, and sell Dogster products and improper assignment of the license agreement and disclosure of trade secrets. Dogsters also is entitled, under the license agreement, to indemnification for losses, attorneys fees and costs arising out of IB's unauthorized assignment of Dogsters' trademarks and trade secrets. Dogsters also is entitled to a preliminary and permanent injunction preventing IB from using Dogsters' trademarks, holding itself out as having a contractual or other relationship with Dogsters, disclosing Dogsters' trade secrets to any third-party, or assisting any third-party to violate Dogsters' trademark rights or trade secret rights.

3.     This third-party action arises out of (i) the action filed by J&J Snack Foods Sales Corp. ("J&J"), captioned above, in which J&J has sought, among other things, declaratory relief that the transfer of the license agreement entered into by IB and Dogsters was valid and IB has acquired rights to Dogsters trademarks and trade secrets and (ii) the counterclaims filed by Dogsters against J&J, seeking declaratory and injunctive relief, as well as monetary relief, arising from J&J's unlawful use of Dogsters' trademarks and trade secrets.

2

## PARTIES

4.    Dogsters is a Delaware limited liability company, having its principal place of business in Milford, Connecticut.

5.    IB is a New Jersey corporation, having had its principal place of business in Ronkonkoma, New York.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over the claims in this action pursuant to 28 USC § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs, and subject matter jurisdiction also arises under the Trademark Act of 1946, as amended, pursuant to 15 USC § 1121 and 28 USC §§ 1331 and 1338.  This Court also has ancillary jurisdiction over the claims in this action, arising in connection with the above captioned action, entitled *J&J Snack Foods Sales Corp. v. Dogsters LLC*, CA No. 07-CV-03917.

7.    Venue is proper before this Court pursuant to 28 USC § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District, and the parties designated the Southern District of New York as appropriate venue in the license agreement.

3

C62183-136851/1051246v1

## FACTS

### Dogsters Brand and Business

8.    Dogsters was founded by a father and son team, Ed and Greg DeLuca, in fall of 2003, to bring to the market a new line of healthy, frozen ice-cream style treats for dogs.

9.    For three years prior to the product launch, the DeLucas worked with PhD, food scientists to research and develop a formula for dog treats that look like human treats, but met Greg DeLuca's stringent requirements, which he calls the Big Four: Fun, Low Fat, Low Calorie and All Natural.

10.    During the first six months on the market, the DeLucas did a "soft launch" of three products for their frozen pet food line.  More than two million "snow cups," one of the three products launched, were sold with distribution in only 17 supermarket chains in the Northeast.

11.    Dogsters quickly became a well-known and esteemed company and product line in the pet food industry, among consumers, and the fund-raising community for pet causes.  Dogsters attained a reputation for high quality and healthful pet treats, which pets and their owners loved.  Dogsters accordingly acquired outstanding renown and invaluable goodwill throughout its markets in the United States.

4

## License Agreement

12.     In April 2004, pursuant to an April 20, 2004 license agreement ("License Agreement") Integrated Brands, Inc. became Dogsters licensee, rolling out Dogsters five premium products in May 2005. The Agreement is attached as Exhibit "A."

13.     As recognized in paragraph 4 of the License Agreement, Dogsters is the owner of the registered trademark and trade name Dogsters for frozen food products, and all associated trademarks, service marks, trade names, logos, trade dress, copyrights, and other intellectual property (collectively, "Trademarks").

14.     Upon the terms and conditions set forth in the License Agreement, Dogsters granted IB the exclusive right, license and privilege of using the Trademarks in the United States through certain specified distribution channels in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of all edible treats or snacks for dogs or other pets sold in a frozen form or intended to be eaten or served in a wholly or partially frozen state, including "ice cream style" novelties and cakes (collectively, "Dogsters Treats").

15.     Dogsters is the owner of the product formulas, recipes, trade dress, manufacturing processes or instructions or other "know how" used in connection with the development, manufacture, marketing, promotion, advertising, sale and distribution of Dogsters Treats.

16.     Dogsters granted IB the exclusive right, license and privilege of using any all existing product formulations, recipes, trade dress, manufacturing processes or instructions or other "know how" used in connection with the development, manufacture,

5

marketing, promotion, advertising, sale and distribution of Dogsters Treats (collectively, "Trade Secrets").

17.    In exchange, IB agreed to "use commercially reasonable efforts in distributing and selling Dogsters Treats in the specified distribution channels in the United States.

18.    IB also agreed to pay Dogsters a royalty of four percent on IB's net sales of Dogsters Treats sold by IB using the Trademarks.

19.    IB agreed to cooperate fully and in good faith with Dogsters to protect Dogsters' rights in the Trademarks.

20.    IB agreed to indemnify Dogsters and hold Dogsters harmless from any claims, suits, damages, out of pocket expenses (including legal fees and out-of-pocket expenses) and losses arising from activities of IB under the License Agreement.

21.    IB agreed that the Dogsters Treats covered by the License Agreement shall be of a suitable standard, appearance, and quality as to be adequate for the protection of the Trademarks and associated goodwill.  IB also agreed that the policy of sale and the distribution of the Dogsters Treats shall not reflect adversely upon the good name of Dogsters or the Trademarks.

22.    IB agreed to keep confidential and not cause or permit disclosure to any third party, not authorized under the License Agreement, any confidential information disclosed by Dogsters pursuant to the License Agreement, including the Trade Secrets.

C62183-136851/1051246v1

23.     The License Agreement also contained termination provisions. Dogsters may terminate the License Agreement if IB is in material default and does not cure the default within 30 days of notice or if not curable in 30 days, IB, exercising due diligence, has commenced taking the steps necessary to prevent the reoccurence of such default and diligently pursues such steps.

24.     Dogsters may also terminate the License Agreement, by giving written notice to IB of such termination, if IB discontinues its distribution and sale of Dogsters Treats using the Trademarks.

25.     The License Agreement will be deemed terminated automatically without notice if IB discontinues its business.

## Notice of Termination of the License Agreement

26.     On May 25, 2006, Dogsters attorney, by letter ("Default Letter"), advised IB that it was in material default of its obligations under the License Agreement.

27.     Dogsters noted in the Default Letter, that in 2006, IB's distribution of Dogsters products had markedly and significantly decreased from 2005. Dogsters was in nearly 30% fewer stores than the previous year. The average number of facings per store had decreased 34% and the data was continuing to trend downward. There also had been a sharp decrease in the net revenue from sales of Dogsters products from 2005 to 2006. IB, which had represented it could provide national distribution had only minimal distribution capabilities in the midwest and west.

28.     Moreover, upon information and belief, IB had not budgeted any money for advertising, marketing, or slotting fees for Dogsters Treats in 2006. Rather than

7

Case 1:07-cv-03917-AKH    Document 5    Filed 06/04/2007    Page 8 of 43

expand Dogsters Treats distribution, as IB had indicated it would do, IB largely abandoned these obligations.

29.     Accordingly, IB was in material breach of its obligation to use commercially reasonably efforts to distribute and sell Dogsters Treats.

30.     Rather than cure the default, IB failed in the last half of 2006 and the first quarter of 2007 to use commercially reasonable efforts in distributing and selling Dogsters Treats.

31.     Accordingly, the License Agreement terminated as early as June 25, 2006, but certainly by the end of March 2007.

### IB Discontinues Its Business

32.     In October 2006, Coolbrands International, Inc., the parent company of IB, announced that it was experiencing severe financial difficulties and had begun to divest itself of its assets.

33.     Dogsters contacted IB to discuss this announcement and its understanding that IB no longer was manufacturing products.

34.     By December 2006, sales of Dogsters Treats had dropped to approximately $18,000 for the month, in comparison to approximately $111,000 during December 2005.

35.     Upon information and belief, the sales of Dogsters Treats continued to languish in the first quarter of 2007, as IB struggled with the collapse of its business and

8

neglected its obligations to use commercially reasonable efforts to distribute and sell Dogsters Treats.

36.     Upon information and belief, IB has discontinued its business including its Dogsters' operations.

### Improper Effort to Assign the License Agreement
### And Improper Disclosure of Dogsters' Trade Secrets

37.     On March 30, 2007, approximately ten months after receipt of the Default Letter and termination of the License Agreement, IB advised Dogsters, by letter, of its intention to assign the License Agreement to J&J Snack Foods Sales Corp. ("J&J").

38.     Three days later, J&J sent an April 2, 2007, letter to Dogsters, stating that IB had assigned the License Agreement to J&J. A true and correct copy of the April 2 letter is attached as Ex. B.

39.     In the April 2, 2007 letter, J&J advised Dogsters that it had "acquired substantial assets" from IB.

40.     The License Agreement granted IB only a limited right to assign the License Agreement to a third party acquirer: "Licensee may assign this Agreement ... to any third party acquirer of all or a majority of the business, assets or capital stock of Licensee...."

41.     Upon information and belief, J&J did not acquire all or a majority of the business, assets or capital stock of IB.

9

42.    IB did not have the right under the License Agreement to assign to J&J because (i) the License Agreement had previously been terminated and (ii) J&J had not acquired all or a majority of the business, assets or capital stock of IB.

43.    On or about April 25, 2006, J&J announced that it will be marketing Dogsters Treats and that "with this unique canine-friendly brand, J&J [] will be a dogs best friend!"

44.    J&J further co-opted Dogsters goodwill and improperly attributed rights to Dogsters Trademarks to itself in its April 25 announcement by stating that "Dogsters® has a leg up on the competition, it is the only healthy, all natural, low calorie, and low fat frozen ice-cream style treat for dogs.  Dogsters® was named one of the top ten Regional New Products in *Frozen Food Age* 2005 Top New Product Awards."

45.    Accordingly, as a result of IB's actions, Dogsters' Trademarks are being improperly exploited by an unauthorized third-party and Trade Secrets have been disclosed to and exploited by that third-party.

46.    On April 12, 2007, J&J instituted an action, United States District Court for the District of New Jersey, against Dogsters seeking a declaration regarding the validity of the License Agreement's assignment.  That action was then discontinued and refiled in the Southern District of New York, as captioned above.  Dogsters has asserted counterclaims in this action to protect its Trademarks and Trade Secrets and to obtain damages for the improper exploitation of its Trademarks and Trade Secrets.

47.    On May 31, 2007, Dogsters sent IB notice of its claim for indemnification, as provided for in the License Agreement, for the damages, out-of-pocket expenses

10

(including legal fees), and losses arising from the improper activities of IB described in this complaint, including those arising from J&J's lawsuit.

### IB Ceases Distribution and Sale of Dogsters Treats

48.     On or before its improper effort to assign License Agreement to J&J, Dogsters discontinued its distribution and sale of Dogsters Treats using the Trademarks.

49.     Notice of termination was sent by Dogsters to IB on May 31, 2007, as a result of IB's failure to distribute and sell Dogsters and numerous other material breaches of the License Agreement described herein.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

50.     Dogsters repeats and realleges each and every allegation of paragraphs 1 through 49 of this Third-Party Complaint, as if fully set forth herein.

51.     As set forth in detail above, IB has breached numerous of its obligation under the License Agreement, including (i) failure to meet its obligation to use commercially reasonable efforts to distribute and sell Dogsters Treats; (ii) failure to act in good faith to protect the Trademarks and goodwill belonging to Dogsters; (iii) failure to maintain the confidentiality of the Trade Secrets; (iv) the purported assignment of the License Agreement to J&J; and (v) the discontinuance of its distribution and sale of the Dogsters Treats.

52.     In addition, IB's discontinuance of its business is a material breach of the License Agreement, which automatically triggers termination of the agreement.

11

53.     As a result of IB's improper actions and omissions, Dogsters is entitled to (i) a declaration that the License Agreement is terminated; preliminary and permanent injunctive relief as set forth in paragraph 2 above; and (iii) an award of damages in an amount to be determined at trial, but believed to be in excess of $75,000, as well as attorneys fees and costs

## SECOND CLAIM FOR RELIEF

### (Contractual Indemnification)

54.     Dogsters repeats and realleges each and every allegation of paragraphs 1 through 53 of this Third-Party Complaint, as if fully set forth herein.

55.     Under Section 5(a) of the License Agreement, IB agrees to hold Dogsters harmless from any claims suits, damages, out-of-pocket expenses (including legal fees and out of pocket expenses) and losses arising from the activities of IB under the License Agreement.

56.     IB's actions described above, including its improper assignment of the License Agreement, improper conveyance to J&J of the Trade Secrets and Trademarks, and failure to meet its other obligations under the License Agreement entitles Dogsters to indemnification.

57.     Dogsters is suffering damages, out-of-pocket expenses (including attorneys fees and costs associated with this third-party lawsuit and the lawsuit filed by J&J), and other losses arising from the activities of IB described above.

58.     Dogsters has provided notice to IB of its right to indemnity.

C62183-136851/1051246v1

59.     According, Dogsters is entitled to an award of damages in amount to be determined at trial, but believed to be in excess of $75,000, as well as attorneys fees and costs.

### THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

60.     Dogsters repeats and realleges each and every allegation of paragraphs 1 through 59 of this Third-Party Complaint, as if fully set forth herein.

61.     As described in further detail above, IB has materially breached the License Agreement and failed to cure in the required time.

62.     As described in further detail above, IB has ceased selling and distributing Dogsters Treats and been sent by Dogsters notice that Dogsters exercised its right under the License Agreement to terminate.

63.     As described in further detail above, upon information and belief, IB has discontinued its business, triggering the automatic termination provision of the License Agreement.

64.     Accordingly, Dogsters is entitled to a declaration that the License Agreement is terminated, that IB has no further rights thereunder, and Dogsters has no further obligations thereunder.

13

## FOURTH CLAIM FOR RELIEF

### (Contributory Trademark Infringement)

65.    Dogsters repeats and realleges each and every allegation of paragraph 1 through 64 of this Complaint, as if fully set for herein.

66.    IB has knowingly allowed, induced and assisted J&J in violating Dogsters' trademark rights in the Trademarks by purporting to assign the License Agreement to J&J and otherwise allowing and assisting J&J in J&J's efforts to market, distribute and sell its own products as Dogsters products.

67.    Upon information and believe, IB received payment from J&J for IB's improper agreement to assign J&J the License Agreement and rights to the Trademarks.

68.    As a result of IB's actions, J&J is wilfully and intentionally violating Dogsters' trademark rights - the Trademarks.  J&J's use of the Trademarks is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does create the false impression that J&J's products are manufactured and distributed with the authorization, approval and sponsorship of Dogsters.

69.    Dogsters, as a result, is suffering irreparable injury entitling it to preliminary and permanent injunctive relief as set forth in paragraph 2 above. Dogsters is also entitled to damages in an amount to be determined at trial, but in excess of $75,000 as well as treble or punitive damages, costs and attorney's fees.

WHEREFORE, Dogsters respectfully requests that the Court enter judgment:

A.    Awarding Dogsters the relief requested in its First Claim For Relief.

B.    Awarding Dogsters the relief requested in its Second Claim For Relief

14

C.    Awarding Dogsters the relief requested in its Third Claim For Relief.

D.    Awarding Dogsters the relief requested in its Fourth Claim For Relief.

E.    Awarding Dogsters its costs and disbursements of the action, including reasonable attorneys' fees.

F.    Granting Dogsters such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          June 4, 2007

BRYAN CAVE LLP

By: _____
        Noah Weissman (NW 8592)
        Herbert Teitelbaum (HT 7762)
        Martha Lieberman (ML 2418)
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
*Attorneys for Dogsters LLC*

15

C62183-136851/1051246v1

Exhibit A

Exhibit B