Donald G. Davis (DGD 3282)
Nancy J. Kim (NJK 4569)
ELLENOFF GROSSMAN & SCHOLE LLP
370 Lexington Avenue, 19th Floor
New York, New York 10017
(212) 370-1300
*Attorneys for Third-Party Defendant Integrated Brands, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J&J SNACK FOODS SALES CORP.,

                                  Plaintiff,                          07-CV-03917 (AKH)

                              - against -

DOGSTERS, LLC,

                                Defendant.
------------------------------------------------------------------X
DOGSTERS, LLC,

                                Third-Party Plaintiff,

                              - against-

INTEGRATED BRANDS, INC.,

                                Third-Party Defendant.
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION TO DISMISS THE THIRD-PARTY COMPLAINT
<u>BY THIRD-PARTY DEFENDANT INTEGRATED BRANDS, INC.</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 3

    A.    The Parties ............................................................................................................ 4

    B.    The License Agreement Between Dogsters and Integrated Brands ................. 4

    C.    Integrated Brands' Assignment of the License Agreement to J&J ................... 5

PROCEDURAL HISTORY OF THIS ACTION ............................................................... 6

ARGUMENT

STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(b)(6) ....................... 7

POINT I

THE MAJORITY OF CLAIMS ASSERTED BY DOGSTERS AGAINST INTEGRATED BRANDS ARE INDEPENDENT CLAIMS, NOT CONTINGENT ON DOGSTERS' LIABILITY TO PLAINTIFF, AND THEREFORE ARE NOT PROPER UNDER FRCP 14 ............................................................................................................................................. 8

POINT II

DOGSTERS' ALLEGED CLAIM FOR INDEMNIFICATION IS FACIALLY DEFECTIVE AND SHOULD BE DISMISSED, BECAUSE THE LICENSE AGREEMENT DID NOT RESTRICT INTEGRATED BRANDS' RIGHT OF ASSIGNMENT ............................................................................................................... 11

POINT III

ALTERNATIVELY, EVEN IF THE ASSIGNMENT FROM INTEGRATED BRANDS TO J&J WAS IMPROPER, THAT WOULD STILL NOT GIVE DOSTERS A VIABLE THIRD-PARTY CLAIM AGAINST INTEGRATED BRANDS ......................................... 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 103 N.E.2d 891, 892 (NY 1952) .................. 12

*Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir. 2002) ....................................................... 7

*Elliott Associates, L.P. v. The Republic of Panama*,
   975 F. Supp. 332, 338 (S.D.N.Y. 1997) .................................................................................. 13

*Elliott Associates, L.P. v. The Republic of Peru*,
   948 F. Supp. 1203, 1210-11 (S.D.N.Y. 1996) ......................................................................... 13

*Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of New York*,
   375 F.3d 168, 176 (2d Cir. 2004) .............................................................................................. 7

*Falcone v. New York*, (S.D. N.Y. 1941); *United States v. Scott*, (S.D. N.Y. 1955) ........................ 8

*Farmers Production Credit Ass'n of Oneonta v. Whiteman*,
   100 F.R.D. 310, 312 (N.D.N.Y. 1983) ...................................................................................... 8

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) ........................... 7

*Hanhauser v. United States*, (M.D. PA 1979) ................................................................................ 8

*Index Fund, Inc. v. Hagopian*, 417 F. Supp. 738, 744 (S.D.N.Y. 1976) ........................................ 9

*LNC Investment, Inc. v. The Republic of Nicaragua*,
   1999 U.S. Dist. LEXIS 1846 at *17-18 (S.D.N.Y. February 19, 1999)(JFK) ......................... 12

*National Bank of Canada v. Artex Indus.*, 627 F. Supp. 610 (S.D.N.Y. 1986) .............................. 8

*Pravin Banker Associates, Ltd. v. Banco Popular Del Peru and the Republic of Peru*,
   109 F.3d 850, 856 (2d Cir. 1997) ............................................................................................ 12

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) .......... 3

*Rhythm & Hues, Inc, v. The Terminal Marketing Co.*,
   2004 U.S. Dist. LEXIS 7625 at *30 (S.D. N.Y. May 4, 2004) ............................................... 13

*Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242 (S.D.N.Y. 2004) .......... 8

*St. Barnabas Hospital v. Amisys, LLC*, 2007,
   U.S. Dist. LEXIS 17121 at *7 (S.D.N.Y. March 5, 2007) ...................................................... 13

*Sullivan v. Int'l Fidelity Ins. Co.*, 96 A.D.2d 555, 465 N.Y.S.2d 235, 238 (2d Dep't 1983) ........ 13

*Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) .................................................................. 8

*Szollosy v. Hyatt Corporation*, 208 F. Supp. 2d 205, 209 (D. Conn. 2002) ................................. 7

*Unilease Computer Corp. v. Major Computer, Inc.*, 126 F.R.D. 490 (S.D.N.Y. 1989) ................. 8

*University Mews Assocs. v. Jeanmarie*,
   122 Misc. 2d 434, 471 N.Y.S.2d 457, 461 (N.Y. Sup. Ct. 1983) ............................................. 12

**Other Authorities**

*Federal Prac. & Pro.* § 1446, at 257 (1971) ............................................................................ 10

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) .................................................................. 2, 7

Rule 14(a) of the FRCP ............................................................................................................ 2, 8

## **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted by Third-Party Defendant, Integrated Brands, Inc. ("Integrated Brands"), in support of its motion to dismiss the Third-Party Complaint of Dogsters, LLC ("Dogsters"), pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Dogsters has failed to state any causes of action against Integrated Brands upon which relief may be granted.

Three of the four purported "third-party claims" asserted by Dogsters (the First, Third and Fourth Causes of Action) seek *direct damages* against Integrated Brands, arising out of a license agreement, dated April 20, 2004 (the "License Agreement"), entered into between such parties, but do *not* seek contribution or indemnification against Integrated Brands for Dogsters' potential liability to the plaintiff in this action, J&J Snack Foods Sales Corp. ("J&J"). Consequently, under the well-settled parameters of Rule 14(a) of the FRCP, the First, Third and Fourth Causes of Action are all facially invalid third-party claims, and should be dismissed as a matter of law.

Only the Second Cause of Action asserted by Dogsters against Integrated Brands purports to seek contribution or indemnification, but such claim also clearly fails to state a viable claim. Dogsters alleges that Integrated Brands should be held responsible for any damages recovered by J&J against Dogsters, because Integrated Brands made an improper assignment of the License Agreement to J&J. Dogsters maintains that the assignment was improper, because J&J had allegedly not acquired all or a majority of Integrated Brands' business, assets or capital stock.

However, this issue is entirely irrelevant as a matter of law, since the language of the License Agreement is merely *permissive* -- stating that Integrated Brands *may* make an assignment in such circumstances, but it does *not expressly limit* assignments to those situations. The controlling case on this issue -- the Second Circuit decision in *Pravin Banker Assocs., Ltd. v.*

2

*Banco Popular del Peru,* 109 F.3d 850, 856 (2d Cir. 1997) -- is virtually on "all fours" with the case at bar, holding that in order to preclude the power to assign, a contractual provision "*must contain express provisions that any assignment shall be void or invalid* if not made in a certain specified way" (emphasis added). *Pravin* further explicitly held that a provision that *permits* assignments in certain situations, but does *not* expressly *limit assignments to such circumstances,* will not act as a restriction on the right to assign. *Pravin* has been followed by this Court in numerous cases.

Moreover, any claim by Dogsters that Integrated Brands lacked the power to assign because of Dogsters' allegedly prior termination of the License Agreement is undercut by Dogsters' own pleading, which concedes that it sent a notice terminating the License Agreement to Integrated Brands *after* Integrated Brands' assignment of the License Agreement to J&J.

Finally, even assuming for the sake of argument that the assignment from Integrated Brands to J&J was not proper, that would still not give Dogsters a third-party cause of action against Integrated Brands. This is because an adjudication in Dogsters' favor that the assignment was improper would defeat the "first party claims" of plaintiff J&J to enforce that assignment, and thus Dogsters, in turn, would have no liability to J&J, and therefore no basis for indemnity or contribution against Integrated Brands.

Based upon the foregoing, the Third-Party Complaint should be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS

A copy of the Third-Party Complaint of Dogsters is annexed as Exhibit "A" to the Affidavit of Donald G. Davis, Esq., sworn to on September 6, 2007 (the "Davis Aff."). The

3

underlying Complaint of plaintiff J&J (the "Complaint"), and the Answer and Counterclaims of Dogsters (the "Answer"), are annexed as Exhibits B and C to the Davis Aff., respectively.

### A. The Parties

Dogsters is a Delaware corporation, which has its principal place of business at 161 Morningside Drive, Milford, Connecticut. (Davis Aff., Exhibit B, at ¶ 3). Dogsters is in the business of selling frozen ice-cream style treats for dogs and is the owners of the trademark and trade name DOGSTERS. (Davis Aff., Exhibit B, at ¶ 4).

Integrated Brands is a Delaware corporation and is in the business as sellers and franchisors of consumer products in the frozen dessert industry, and manufactures, markets and distributes a diverse range of frozen dessert products.

J&J is a New Jersey corporation and is in the business of manufacturing nutritional snack foods and distributes frozen beverages to major supermarket chains and retail supermarket industries. (Davis Aff., Exhibit B, at ¶ 2).

### B. The License Agreement Between Dogsters and Integrated Brands

Pursuant to a License Agreement entered into between Dogsters and Integrated Brands in April of 2004, Integrated Brands obtained the exclusive license to use the Dogsters' trademarks and other of Dogsters' intellectual properties in order to develop, manufacture, market, promote, advertise, sell and distribute Dogsters' edible treats and snacks for dogs. (Davis Aff., Exhibit A-1).

With respect to Integrated Brands' right to assign the License Agreement to third parties, the License Agreement provides, in pertinent part:

4

> Licensee [Integrated Brands] may assign this Agreement to any parent, affiliate or subsidiary of Licensee and to any third-party acquirer of all or a majority of the business, assets or capital stock of Licensee, provided such third-party is not a material competitor of Licensor [Dogsters] in the market for pet food products, and further provided that any such third-party shall agree in advance in writing to amend Section 1.g. of this Agreement to insert the word "best" between the word "reasonable" and the word "efforts."

(Davis Aff., Exhibit A-1, at ¶ 14(c))[1]

### C.   Integrated Brands' Assignment of the License Agreement to J&J

On or about March 29, 2007, Integrated Brands notified Dogsters of its intention to assign the License Agreement to J&J. (Davis Aff., Exhibit D). In response to such notice, Dogsters, by its counsel, sent a letter to CoolBrands International, Inc. (the parent corporation of Integrated Brands), objecting to the transfer of the License Agreement from Integrated Brands to J&J, asserting that J&J did not purchase "all or a majority of the business, assets or capital stock of Licensee," (Davis Aff., Exhibit B-2). J&J and Integrated Brands shortly thereafter entered into an Asset Purchase Agreement, in which J&J purchased certain assets from Integrated Brands, including the rights to the License Agreement. (Davis Aff., Exhibit E). In response to Dogsters' objection, J&J delivered a letter to Dogsters, dated April 2, 2007, stating that it did, indeed, acquire the majority of assets from Integrated Brands, and that it had also agreed to insert the word "best" as set forth in paragraph 14(c) of the License Agreement. (Davis Aff., Exhibits A-2 and C-2). Furthermore, J&J informed Dogsters that it was a substantial public company with particular expertise in manufacturing, selling and transporting frozen food products. *Id.*

---

[1] The License Agreement provides that it is to be governed by New York law. (Davis Aff., Exhibit A-1, at ¶ 17).

5

## PROCEDURAL HISTORY OF THIS ACTION

Plaintiff J&J commenced the underlying action against Dogsters by filing and serving a summons and complaint on or about May 15, 2007. (Davis Aff., Exhibit B). J&J essentially alleges that Dogsters breached the terms of the License Agreement after it was assigned to J&J by failing to cooperate with J&J, rejecting J&J as the assignee of the License Agreement, and otherwise refusing to be bound by the terms of the License Agreement. (Davis Aff., Exhibit B, ¶¶ 17, 19). J&J further alleges that Dogsters has been negotiating an exclusive agreement with another distributor, in direct violation of the License Agreement. (Davis Aff., Exhibit B, ¶ 18). J&J has asserted claims for declaratory judgment, breaches of contract, and tortious interference with contract.

On or about June 4, 2007, Dogsters answered the complaint and alleged counterclaims against J&J. (Davis Aff., Exhibit C) Simultaneous with joining issue in the main claim, Dogsters brought a third-party action against Integrated Brands. (Davis Aff., Exhibit A) In its Third-Party Complaint, Dogsters brought claims for "Breach of Contract" ("First Cause of Action"), "Contractual Indemnification" ("Second Cause of Action"), "Declaratory Judgment" ("Third Cause of Action"), and "Contributory Trademark Infringement" ("Fourth Cause of Action"). (Davis Aff., Exhibit A).

As set forth below, three of the four claims brought by Dogsters -- the First, Third and Fourth Causes of Action -- are procedurally improper under FRCP 14(a), in that they seek direct damages for what it asserts are Integrated Brands' own breaches of the License Agreement prior to Integrated Brands' assignment of such agreement. Conversely, such claims do not constitute claims for contribution or indemnification of Dogsters' potential liability to J&J. Moreover, the sole purported "indemnification" claim asserted by Dogsters (the Second Cause of Action) is

6

predicated on a plainly erroneous interpretation of the law -- that the License Agreement restricted Integrated Brands right of assignment -- when the relevant contract language instead permitted Integrated Brands, under controlling law, an unlimited right of assignment of the License Agreement.[2]

Finally, Dogsters could not assert a proper third-party claim against Integrated Brands even if the assignment was *not* proper, since such ruling would defeat the underlying claims of the plaintiff, which in turn would undermine any claim for indemnity or contribution by Dogsters against Integrated Brands.

## ARGUMENT

## STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(b)(6)

In considering a motion to dismiss pursuant to FRCP 12(b)(6), the Court construes the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir. 2002). However, mere conclusions of law or unwarranted deductions need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). "The office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004). In its review of a motion to dismiss, the Court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken. *Szollosy v. Hyatt Corporation*, 208 F. Supp. 2d 205, 209 (D. Conn. 2002).

---

[2] While Integrated Brands maintains and expressly reserves the argument that it actually did sell to J&J a majority of its assets, that issue need not be reached in light of the clear-cut law in New York that the applicable contract language does not restrict Integrated Brands' right of assignment.

7

Dismissal is appropriate when it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## POINT I

### THE MAJORITY OF CLAIMS ASSERTED BY DOGSTERS AGAINST INTEGRATED BRANDS ARE INDEPENDENT CLAIMS, NOT CONTINGENT ON DOGSTERS' LIABILITY TO PLAINTIFF, AND THEREFORE ARE NOT PROPER UNDER FRCP 14

It is well-established that a party may only bring a third-party claim for contribution or indemnification under FRCP 14. FRCP Rule 14(a) provides that "…a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Consequently, a third-party claim may be asserted under Rule 14 only if third-party's liability is in some way dependent on the outcome of the main claim or when the third-party is secondarily liable to defendant. *See National Bank of Canada v. Artex Indus.*, 627 F. Supp. 610 (S.D.N.Y. 1986); *Unilease Computer Corp. v. Major Computer, Inc.*, 126 F.R.D. 490 (S.D.N.Y. 1989); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242 (S.D.N.Y. 2004); *Hanhauser v. United States*, (M.D. PA 1979). The third-party claim cannot simply be an independent or related claim, but must be based upon plaintiff's claim against the original defendant. *Id.*; *Falcone v. New York*, (S.D. N.Y. 1941); *United States v. Scott*, (S.D. N.Y. 1955).

As stated in *National Bank of Canada, supra*, 627 F. Supp. at 613 (emphasis added):

> "the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claims is not enough." *Farmers Production Credit Ass'n of Oneonta v. Whiteman*, 100 F.R.D. 310, 312 (N.D.N.Y. 1983)(quoting 6 Wright & Miller, *Federal Prac. & Pro.* § 1446, at 257 (1971)). The essential purpose of Rule 14 requires that defendant's third-

> party claim derive from the main claim, and that "the claim of liability to the defendant and third-party plaintiff accrue only upon a finding of defendant's liability to the plaintiff on the main claim." *Index Fund, Inc. v. Hagopian*, 417 F. Supp. 738, 744 (S.D.N.Y. 1976). ... The outcome of the third-party claim must be contingent on the outcome of the main claim ....

Similarly, as set forth in *Siemens Westinghouse, supra,* 299 F. Supp. 2d at *248-49*:

> "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." [citations omitted] Even though the third-party claims involve the same power plant project as the principal complaint, "the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." [citations omitted]. ... The fact that the allegations in the third-party complaint may depend on the adjudication of [defendant's] own counterclaims against [plaintiff] is also insufficient because the plain language of Rule 14(a) requires the third-party claim to depend upon the "the plaintiff's claim against the against the third-party plaintiff."

Dogsters' First, Third and Fourth Causes of Action against Integrated Brands for Breach of Contract, Declaratory Judgment and Trademark Infringement must all be dismissed, since these are all independent, direct claims, and are not claims are for contribution or indemnification, or otherwise contingent on Dogsters' liability to plaintiff.

Dogsters' First Cause of Action alleges that Integrated Brands breached the terms of the License Agreement with Dogsters, by failing to distribute and sell Dogsters' products and discontinuing the distribution and sale of these products, failing to protect Dogsters' intellectual properties and goodwill, failing to maintain certain of Dogsters' trade secrets, and wrongfully assigning the License Agreement to J&J. As set forth in the Third-Party Complaint:

> Integrated Brands has breached numerous of its obligation [sic] under the License Agreement, including (i) failure to meet its obligations to use commercially reasonable efforts to distribute and sell Dogsters Treats; (ii) failure to act in good faith to protect the Trademarks and goodwill belonging to Dogsters; (iii) failure to

>    maintain the confidentiality of the Trade Secrets; (iv) the purported assignment of the License Agreement to J&J; and (v) the discontinuance of its distribution and sale of the Dogsters Treats.

(Davis Aff., Exhibit A, ¶ 51).

Clearly, the First Cause of Action does not seek contribution or indemnification for claims asserted by J&J against Dogsters; nor is it in any way contingent on the outcome of the claims by plaintiff against Dogsters. Instead, such claim seeks direct damages against Integrated Brands for its alleged breaches of the License Agreement. Such claim is therefore improper under FRCP 14(a).

Dogsters' Third Cause of Action also fails to state a proper third-party claim for the identical reason. The Third Cause of Action seeks declaratory relief, specifically, "a declaration that the License Agreement is terminated, that Integrated Brands has no further rights thereunder, and Dogsters has no further obligations thereunder." (Davis Aff., Exhibit A, ¶ 64). Consequently, this cause of action also does not seek contribution or indemnification, and should therefore also be dismissed as an improper third-party claim.

Dogsters' Fourth Cause of Action also seeks direct damages from Integrated Brands, for alleged trademark infringement by Integrated Brands, and therefore suffers from the same fatal defect as a third-party claim. Dogsters alleges that Integrated Brands:

>    knowingly, induced and assisted [J&J ] in violating Dogsters' trademark rights in the Trademarks by purporting to assign the License Agreement to [J&J] and otherwise allowing and assisting [J&J] in [J&J's] efforts to market, distribute and sell its own products as Dogsters products.

(Davis Aff., Exhibit A, ¶ 66).

Although Dogsters alleges in its Fourth Cause of Action that Integrated Brands acted improperly in connection with the assignment to J&J, such claim is still not one for contribution

10

or indemnification, and therefore is still not a proper third-party claim. *See National Bank of Canada; Siemens Westinghouse, supra.*

Consequently, since the First, Third and Fourth Causes of Action asserted by Dogsters are all direct claims for damages against Integrated Brands, and do not seek contribution or indemnification for the claims asserted against Dogsters by J&J in the underlying complaint, they are all improper third-party claims and should be dismissed.

**POINT II**

**DOGSTERS' ALLEGED CLAIM FOR INDEMNIFICATION
IS FACIALLY DEFECTIVE AND SHOULD BE DISMISSED,
BECAUSE THE LICENSE AGREEMENT DID NOT RESTRICT INTEGRATED
BRANDS' RIGHT OF ASSIGNMENT**

Dogsters' Second Cause of Action for indemnification should be dismissed with prejudice because it fails to state a viable cause of action. The core of that allegation is that Integrated Brands improperly assigned the License Agreement to J&J, in violation of a purported limitation contained in the License Agreement, *i.e.*, that the assignment encompassed the sale of all or a majority of Integrated Brands' business, assets or stock to J&J. The limitation states in full:

> Licensee [Integrated Brands] may assign this Agreement to any parent, affiliate or subsidiary of Licensee and to any third-party acquirer of all or a majority of the business, assets or capital stock of Licensee, provided such third-party is not a material competitor of Licensor [Dogsters] in the market for pet food products, and further provided that any such third-party shall agree in advance in writing to amend Section 1.g. of this Agreement to insert the word "best" between the word "reasonable" and the word "efforts."

(See Davis Aff., Exhibit A-1, ¶ 14(c)).

Dogsters' argument is flawed, as a matter of law, because the language of the License Agreement merely provides for the express right to assign under certain circumstances, but clearly does not contain an express prohibition on assignment in other circumstances.

Under New York law, only *express* limitations on assignability are enforceable: "To reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specific way." *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru and the Republic of Peru*, 109 F.3d 850, 856 (2d Cir. 1997)( citing *Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 103 N.E.2d 891, 892 (NY 1952); *University Mews Assocs. v. Jeanmarie*, 122 Misc. 2d 434, 471 N.Y.S.2d 457, 461 (N.Y. Sup. Ct. 1983)) .

In *Pravin*, a lending agreement provided that the lender could "assign all or any part of [their] interest in this letter agreement to any financial institution." 109 F.3d at 856. The Second Circuit held that this language did not expressly restrict the assignment in any way: "While it explicitly *permits* assignments to financial institutions, it does *not limit* assignments only to these entities. The assignment was therefore valid at the time it was made." *See id.* (emphasis added).

*Pravin* has been expressly followed in numerous decisions by this Court, and applied to contract language that is closely analogous to that contained in both *Pravin* and in this case. In *LNC Investment, Inc. v. The Republic of Nicaragua, 1999 U.S. Dist. LEXIS 1846 at \*17-18 (S.D.N.Y. February 19, 1999)*(JFK), this Court, relying on *Pravin*, held that where contract language provided that an assignment "*may* [be made] to any financial institution," an assignment was proper "as a matter of New York law ... *regardless* of whether [the assignee] qualifies as a financial institution," since "it does not limit assignments only to these entities."

*Accord, Elliott Associates, L.P. v. The Republic of Panama*, 975 F. Supp. 332, 338 (S.D.N.Y. 1997) (finding assignment valid where agreement permit assignments to financial institutions and banks without expressly restricting assignments to these two entities); *Elliott Associates, L.P. v. The Republic of Peru*, 948 F. Supp. 1203, 1210-11 (S.D.N.Y. 1996).

As recently reaffirmed by Judge Wood in *St. Barnabas Hospital v. Amisys, LLC*, 2007, *U.S. Dist. LEXIS 17121 at *7 (S.D.N.Y. March 5, 2007):* "To prohibit nonconsensual assignment, a contract must contain "clear, definite and appropriate language" declaring any assignment void. [*citing, Allhusen, supra; Pravin, supra*]. Although ... [a] [c]ontract ... authorizes each side to assign the contract under certain specified conditions, the enumeration of those conditions does not suggest assignment is prohibited under all other circumstances." *See also Rhythm & Hues, Inc, v. The Terminal Marketing Co.*, 2004 U.S. Dist. LEXIS 7625 at *30 (S.D. N.Y. May 4, 2004) ("under New York law, only express limitations on assignability are enforceable"[citing *Pravin*]); *Sullivan v. Int'l Fidelity Ins. Co.*, 96 A.D.2d 555, 465 N.Y.S.2d 235, 238 (2d Dep't 1983) (contracts are freely assignable in the absence of clear language expressly prohibiting assignment).

In this case, the assignment language in the License Agreement is clearly permissive and not prohibitive: stating that Integrated Brands *may* assign the License Agreement if Integrated Brands sold all or a majority of its business to a third-party. As *Pravin* and its progeny clearly hold, such language, as a matter of law, does not prevent an assignment in other circumstances as well.

13

## POINT III

### ALTERNATIVELY, EVEN IF THE ASSIGNMENT FROM INTEGRATED BRANDS TO J&J WAS IMPROPER, THAT WOULD STILL NOT GIVE DOGSTERS A VIABLE THIRD-PARTY CLAIM AGAINST INTEGRATED BRANDS

Finally, even assuming *arguendo* that the assignment from Integrated Brands to J&J was not proper – or that the Court decides that fact issues preclude determination of such matter at this time – that would still not make Dogsters' Second Cause of Action a proper third-party cause of action against Integrated Brands.

More specifically, a proper third-party claim is based on the shifting or apportionment of liability from a defendant to a third-party defendant, such as where an employer, for example, seeks contribution or indemnity for the damages caused by the acts of its employee. *See Point I, supra*. In this case, however, that is simply not possible. The only way that defendant Dogsters can be held liable to the plaintiff in the underlying action is if the assignment from Integrated Brands to J&J is adjudicated to have been proper, and in that event, Integrated Brands obviously could not be held liable to Dogsters for that very act of making such assignment.

Conversely, if the assignment from Integrated Brands to J&J is ruled to have been improper, then J&J, whose entire Complaint is predicated on the occurrence of a *proper* assignment -- *i.e.*, Dogsters' alleged refusal or failure to comply with its obligations pursuant to the assignment -- would have no basis to recover damages against Dogsters. In that event, Dogsters, in turn, would have no grounds upon which to recover on a third-party claim against Integrated Brands, since Dogsters would have no underlying liability to J&J.

In short, since the propriety of Integrated Brands' actions vis-a-vis the assignment is aligned with the rights of the plaintiff in this action, there is simply no scenario in which Dogsters could state a proper third-party claim based on an allegedly improper assignment.

## CONCLUSION

For the foregoing reasons, Third-Party Defendant Integrated Brands respectfully requests that the Court dismiss the Third-Party Complaint in its entirety and with prejudice, and grant Integrated Brands such and other relief as this Court deems just and proper.

Dated: New York, New York
September 6, 2007

*Attorneys for Third-Party Defendant Integrated Brands, Inc.*

By: _____
Donald G. Davis, Esq. (DGD 3282)
370 Lexington Avenue, 19th Floor
New York, New York 10017
(212) 370-1300